United States District Court
Southern District of Texas
**ENTERED**
May 13, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEJANDRO  COSTILLA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-57 |
| | § | |
| KEN  PUTNAM JR., *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

This case was filed as a civil rights action by a Texas state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C.  §§ 1915(e)(2), 1915A.    Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper.  *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999).  Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court retain Plaintiff's Eighth Amendment claim alleging that overcrowding at the McConnell Unit has caused certain unsafe housing conditions, and that service be ordered on the current warden, Warden Matt Barber in his official capacity only, because Plaintiff is seeking only injunctive relief and not monetary damages.  It is respectfully recommended further that Plaintiff's remaining claims against the remaining defendants be dismissed for failure to state cognizable § 1983 claims and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.    JURISDICTION.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined at the McConnell Unit in Beeville, Texas.  Plaintiff is serving a seven-year sentence for sexual assault entered in Travis County, Texas.

On February 22, 2016, Plaintiff filed his original complaint alleging unconstitutional conditions of confinement at the McConnell Unit and seeking injunctive relief only.  (D.E. 1, p. 4).  Plaintiff named as defendants: (1) Ken Putnam, Jr., assistant warden; (2) John Crouch, Laundry Department Manager; (3) Captain Juan Salazar, Food Services Manager; (4) William Stephens, Director of the TDCJ-CID; and (5) E. Garza, Assistant Region IV Director.  (D.E. 1, p. 3).

A *Spears*[1] hearing was conducted on March 17, 2016, following which, Plaintiff was given an additional seven (7) days to supplement his complaint, but he declined to do so.  The following allegations were made in Plaintiff's original complaint or at the hearing.

Plaintiff arrived at the McConnell Unit in March 2014.  He is employed on the medical squad and gets called out to perform various clean-up jobs throughout the prison during the day.  He lives in a dorm which consists of bunk beds in cubicles that contain a small desk and a place to store personal property.  There are six (6) dorms at the McConnell Unit.  Each dorm holds 100 inmates and has its own dayroom and bathroom facilities.  The bathroom has twelve showers.

Plaintiff alleges that on April 20, 2015, prison officials installed twenty new bunks in each of the dayrooms of the six McConnell Unit dorms to house a total of 120 new prisoners.  With the addition of twenty new inmates to his dorm, Plaintiff has been subjected to "sleep deprivation, long pill window lines, [and] improper calories and portions of food which prevented [a] nutritional diet."  (D.E. 1, p. 4).

Plaintiff claims that, because of overcrowding and staff shortages, it is difficult to see a medical provider.  He was seeing a mental health care provider for insomnia, but has been unable to attend appointments due to lack of escorts.

Plaintiff claims that he receives almost "zero" recreation and he cannot remember the last time he was allowed outside for recreation time.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Plaintiff alleges that he has lost approximately twenty pounds since his arrival at the McConnell Unit.   He complains that the kitchen fails to serve fresh fruits or vegetables.   He is often stressed about the food situation.   He became sick and had diarrhea one time after eating in the dining facility.

Plaintiff alleges that, because of the increase of prisoners in his dorm, the prison operates on a 24-hour a day schedule with necessities such as uniforms and bedding being distributed at 3:00 a.m.   He argues that he is unable to get eight hours of uninterrupted sleep, although he admits that he has not been diagnosed with any sleep disorder or illness caused by a lack of sleep.   He claims also that the overcrowding leads to more fighting between prisoners and that the prison guards are over-worked, stressed out, and more prone to use excessive force.   He does not feel safe, but he has not filed a Life in Danger claim.

Plaintiff claims that the available bathroom facilities cannot handle the number of inmates in his dorm.   He claims that the showers are filthy but officials will not provide cleaning supplies.   He states that many of the sinks and toilets do not work, and that only four of the twelve showers are operable.   He has had to wait up to one hour to take a shower.

Plaintiff is seeking injunctive relief only to correct the overcrowding and bunks in the dayroom, the distribution of necessities at 3:00 a.m., the unsanitary bathrooms, the deficiencies in the diet, the lack of escorts for medical and recreation, and other problems that arise from not having enough staff and too many prisoners.

### III.   LEGAL STANDARD.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  *Id.*

### IV.   DISCUSSION.

#### A.   Prospective injunctive relief.

Plaintiff is suing Defendants for injunctive relief only to change the prison conditions of which he complains.  To achieve this, Plaintiff must sue defendants in their official capacities.  *See Ex parte Young,* 209 U.S.123, 149 (1908) (Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against state

officials on the basis of federal claims); *Pennhurst v State School & Hospital v. Halderman,* 465 U.S. 89, 96 (1984) (same).   To the extent Plaintiff has sued any defendant in his official capacity for monetary damages, those claims are effectively claims against the State of Texas itself and are barred by the Eleventh Amendment.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

### B.    Supervisory liability under section 1983.

Plaintiff has named as defendants two individuals who are not associated with the daily operations of the McConnell Unit: William Stephens, the TDCJ-CID Executive Director, and E. Garza, the Assistant Director of Region IV. Despite their positions within the TDCJ-CID, Plaintiff has failed to allege any specific facts showing that these defendants were personally involved in any of the matters about which Plaintiff complains in this lawsuit.  Specifically, Plaintiff alleges no facts to demonstrate that he personally spoke to or contacted William Stephens about over-crowding or staff shortages at the McConnell Unit, and he complains only that E. Garza simply denied his Step 2 grievance.  (*See* D.E. 1, p. 3).

Vicarious liability does not apply to § 1983 claims.  *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (government officials may not be held liable for the unconstitutional

conduct of their subordinates under a theory of *respondeat superior*).   Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability; the doctrine of *respondeat superior* does not apply to such actions. *Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (under § 1983, a government official may be held liable solely for his own conduct).   Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.   *See Jones v. Lowndes County, Miss.,* 678 F.3d 344, 349 (5th Cir. 2012) ("A section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 169 (5th Cir. 2010) ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor.").

Generally, a supervisor may be held liable only if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in plaintiff's injuries.   *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011). A supervisor may be held personally liable for inadequate supervision or a failure to train subordinates only where the failure to train or supervise amounts to deliberate indifference and is a proximate cause of a constitutional violation.   *See id.,* 659 F.3d at 446 ("A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link

exists between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference).  Merely negligent or incompetent supervision cannot form a basis for liability under § 1983; the supervisor's actions or inactions must rise to the level of "deliberate indifference." *Id.*

In his original complaint, Plaintiff alleged that Director Stephens violated his constitutional rights because he "allowed sustained overcrowding at McConnell Unit and other dorms in system." (D.E. 1, p. 3).  However, Plaintiff offered no evidence except his own conclusory allegations that Defendant Stephens is involved in individual prison population/staffing decisions or whether those determinations are made by himself, a committee, the unit wardens themselves, or some combination of officials.  Plaintiff testified that it was McConnell Unit officials who brought in the extra bunks and modified the prison schedule.  Without more, Plaintiff fails to offer evidence to establish that Director Stephens was personally involved in the day-to-day operations of the McConnell Unit or that he could provide the injunctive relief Plaintiff is seeking.  Thus, it is respectfully recommended that Plaintiff's claims against this defendant be dismissed with prejudice.

As to E. Garza, Plaintiff alleged that this defendant "signed off on Step Two grievance stating Step One was appropriate response with no action taken to correct violations." (D.E. 1, p. 3).  That is, Plaintiff complains that Mr. Garza upheld the denial of his Step 2 grievance.  This allegation fails to state a constitutional violation because a prisoner has no constitutional right to file a grievance, let alone have it investigated or answered in his favor.  *See Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005)

(prisoner has no due process right in having grievances investigated or resolved in his favor).  Plaintiff's claims against E. Garza fail to state a constitutional violation and can be dismissed.

### C.      Conditions of confinement.

Plaintiff has sued Assistant Warden Putnam, John Crouch, the Laundry Manager Supervisor, and Captain Salazar, the Food Services Supervisor, in their official capacities for injunctive relief essentially seeking to hold them liable for the deficiencies he perceives in their departments.  However, at the *Spears* hearing, Plaintiff admitted that he had never brought his complaints to these individuals personally.  Plaintiff was not opposed to substituting in Warden Barber as the official that could secure the injunctive relief he seeks should he prevail on his claims, and therefore, it is respectfully recommended that Warden Barber be substituted in as the proper party defendant, and that Putnam, Crouch, and Salazar be dismissed.

Plaintiff claims that the over-crowding and staff shortages at the McConnell Unit have resulted in unconstitutional conditions of confinement, including (1) cubicles in the dayroom; (2) unsanitary bathrooms and delays in showers; (3) insufficient and inadequate food; (4) delays in medical care; (5) denial of recreation time; (6) increased fights between inmates; (7) over-worked correctional officers; and (8) disruption in the proper sleep schedule.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  Prison officials must provide humane conditions of confinement; ensure that inmates   receive adequate food, clothing, shelter, and medical care; and take

reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).  Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety. *Farmer*, 511 U.S. at 834.   Deliberate indifference is more than mere negligence. *Id.* at 835.   To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

Overcrowding can lead to unconstitutional conditions. *See Lott v. Edenfeld,* 542 Fed. Appx. 311 (5th Cir. 2013).   However, in *Lott,* the Fifth Circuit determined that, if the warden was not responsible for the overcrowding itself, she could not be responsible for the unconstitutional conditions as long as she responded reasonably. *Id.,* at 316.

### *(1)   Over-crowding.*

As  previously  noted,  additional  beds  were  placed  in  each  dayroom  to accommodate more prisoners on the McConnell Unit.   More specifically, 20 more offenders were added to each dorm, and an area originally designed to hold 100 inmates, now holds 120; an increase of 20%.   According to Plaintiff, the increase in prison population was not met with a corresponding increase in staff thus causing problems with escorts to medical and recreation.   In addition, the pill window line is now longer, as is

the dining facility line, and necessities must be given out earlier, interfering with Plaintiff's sleep. The overcrowding has led to more inmate fights and over-worked officers. He claims that he has lost a significant amount of weight as a consequence of there being less food and being rushed through the chow line. He claims he does not get adequate sleep because necessities are passed out at 3:00 a.m. in the morning.

The Supreme Court does not require an inmate to suffer a tragedy before raising an Eighth Amendment claim. *Farmer*, 511 U.S. at 845. Taking Plaintiff's allegations as true, the makeshift dorm in the dayroom with a 20% increase in the inmate population of the dorm presents an extreme living situation that may in fact violate the Eighth Amendment. Thus, it is respectfully recommended that this claim be examined further.

>    *(2)*     ***Unsanitary showers and bathrooms.***

Plaintiff complains that most sinks in his dorm area are broken, maintenance is "non-existent," and the showers are not sanitized. Plaintiff claims that the available plumbing is insufficient for the number of inmates that must use it and further, that due to the overcrowding, the bathrooms are no longer sanitary and have caused him injury. Unsanitary conditions and the possibility of disease can state a claim under the Eighth Amendment. *Herman v. Holiday,* 238 F.3d 660, 665 (5th Cir. 2001). Taking Plaintiff's allegations as true, it is respectfully recommended that this claim be retained and that Warden Barber, be served and address this allegation.

### (3)     *Delays in medical.*

At the *Spears* hearing, Plaintiff testified that overcrowding has led to delays in his being able to see his mental health care provider and to even receive his medication at the pill window.

Plaintiff failed to identify a single occasion on which he sought medical attention and that it was denied due to overcrowding.  In addition, he admitted that he had been sent to the Hightower Unit for psychological/cognitive testing, but that he refused to participate, wanting to return to the McConnell Unit.  With medical treatment, it is not uncommon that a waiting period is involved, and Plaintiff fails to claim any injury from any alleged delay.  Plaintiff fails to state an Eighth Amendment claim concerning medical treatment and overcrowding.  It is therefore recommended that this aspect of Plaintiff's over-crowding claim be dismissed.

## V.     RECOMMENDATION.

For the reasons stated above, it is respectfully recommended that Plaintiff's Eighth Amendment claims complaining about the overcrowding, except how it affects his medical treatment, be retained, and that service be ordered on McConnell Unit Warden Matt Barber in his official capacity only to answer these specific claims for purposes of fashioning injunctive relief should Plaintiff prevail on his claims.  It is respectfully recommended further that Plaintiff's claims against Director Stephens and E. Garza be dismissed for lack of personal involvement and for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  It is respectfully recommended that Plaintiff's claims against Warden Putnam, Captain Juan Salazar and

John Crouch be dismissed as Plaintiff's claims are more properly directed against Warden Barber.

ORDERED this 13th day of May, 2016.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).