United States District Court
Southern District of Texas
**ENTERED**
June 26, 2017
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALEJANDRO COSTILLA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-57 |
| | § | |
| KEN PUTNAM JR., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND TO DISMISS CLAIMS FOR INJUNCTIVE RELIEF

In this prisoner civil rights action, Plaintiff Alejandro Costilla alleges unconstitutional conditions of his confinement in violation of his Eighth Amendment rights. (D.E. 1). Pending is the Defendants' motion for summary judgment. (D.E. 22). For the reasons stated herein, it is respectfully recommended that Plaintiff's claims for injunctive and declaratory relief be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). It is further recommended that the Court **GRANT** Defendants' motion for summary judgment and **DISMISS** Plaintiff's claims against Defendants in their individual capacities with prejudice.

## I.    JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. 636.[1]

## II.   PROCEDURAL BACKGROUND

Plaintiff is a former prisoner in the McConnell Unit of the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).  Plaintiff's allegations and claims arise in connection with his period of incarceration at the McConnell Unit.  On February 22, 2016, Plaintiff filed his original complaint alleging unconstitutional conditions of confinement at the McConnell Unit and seeking injunctive relief only. (D.E. 1, p. 4).  Plaintiff named as defendants: (1) Ken Putnam, Jr., Assistant Warden; (2) John Crouch, Laundry Department Manager; (3) Captain Juan Salazar, Food Services Manager; (4) William Stephens, Director of the TDCJ-CID; and (5) E. Garza, Assistant Region IV Director. (D.E. 1, p. 3).

On March 17, 2016, a *Spears*[2] hearing was conducted, at which the undersigned advised Plaintiff that the McConnell Unit warden would serve as the defendant in this case for purposes of any request for injunctive relief.  The undersigned further provided Plaintiff with an additional seven (7) days to supplement his complaint.  Plaintiff, however, declined to file a supplement.

---

[1] *See* Special Order C-2015-01 on file with the District Clerk.
[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

On May 13, 2016, the undersigned issued a Memorandum and Recommendation (May 13, 2016 M&R) recommending that:

> Plaintiff's Eighth Amendment claims complaining about the overcrowding, except how it affects his medical treatment, be retained, and that service be ordered on McConnell Unit Warden Matt Barber in his official capacity only to answer these specific claims for purposes of fashioning injunctive relief should Plaintiff prevail on his claims.

(D.E. 9, p. 12).  The undersigned further recommended that Plaintiff's claims against: (1) Director Stephens and E. Garza be dismissed for lack of personal involvement and for failure to state a claim and/or as frivolous; and (2) Warden Putnam, Captain Salazar, and John Crouch be dismissed because such claims are more properly directed toward Warden Barber.  (D.E. 9, pp. 12-13).  The undersigned ordered service on Warden Barber.  (D.E. 10).

Plaintiff submitted Objections to the May 13, 2016 M&R.  (D.E. 11).  On July 1, 2016, Senior United States District Judge Hilda Tagle entered a Memorandum and Order noting Plaintiff's statement at the *Spears* hearing that he sued Defendants for declaratory and injunctive relief in their official capacities and for monetary relief in their individual capacities.  (D.E. 14, p. 4).  The District Judge, therefore, sustained Plaintiff's objections in part and retained Plaintiff's individual-capacity claims for monetary relief against all named Defendants except TDCJ Director Stephens.  (D.E. 14, pp. 10-11).  The District Judge adopted the May 13, 2016 M&R in all other respects, dismissed Plaintiff's claims for monetary relief against all Defendants in their official capacities as barred by the Eleventh Amendment, and denied without prejudice Plaintiff's motion to amend the

complaint.  (D.E. 14, pp. 10-11).   In light of the District Judge's Memorandum and Order, the undersigned ordered service on Warden Putnam, Captain Salazar, and John Crouch.  (D.E. 15).

Warden Barber filed his answer to Plaintiff's complaint.  (D.E. 13).  Warden Putnam, Captain Salazar, and John Crouch (hereinafter referred to collectively as "Defendants") subsequently filed their joint answer and raised the defense of qualified immunity.  (D.E. 16).  Defendants further stated that Plaintiff's claims are barred by his failure to properly exhaust his administrative remedies.  (D.E. 16).

On February 2, 2017, Defendants filed the instant motion for summary judgment. (D.E. 22).  Plaintiff has not responded to the summary judgment motion.  The motion, therefore, may be deemed unopposed.[3]

## III.   CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff seeks injunctive and declaratory relief against Defendants in their official capacities.  Warden Barber was added to this case in his official capacity for purposes of providing injunctive relief to Plaintiff should he prevail on his claims.  Plaintiff has informed the Court that he is no longer incarcerated at the McConnell Unit and has been released into the free world.  (D.E. 21 and 24).

Claims for declaratory and injunctive relief based on the conditions of confinement are rendered moot upon prisoner's release from custody or transfer to

---

[3] According to the Local Rules for the Southern District of Texas, "[f]ailure to respond will be taken as a representation of no opposition."  LR 7.4.  However, the undersigned has addressed the merits of the motion in this memorandum and recommendation.

another facility.  *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)).  Furthermore, the possibility of Plaintiff's return to the McConnell Unit is much too speculative to warrant relief.  *Id.*  Because Plaintiff is no longer incarcerated at the McConnell Unit, it is respectfully recommended that his claims for declaratory and injunctive relief against Defendants and Warden Barber be dismissed pursuant to § 1915(e)(2)(B).[4]

## IV.   SUMMARY JUDGMENT EVIDENCE

Defendants offer the following summary judgment evidence:

Ex. A:  Affidavit of Senior Warden Miguel Martinez (D.E. 22-1);

Ex. B:  Relevant Portions of Plaintiff's TDCJ Grievances (D.E. 22-2);

Ex. C:  Relevant Portions of Plaintiff's Medical Records (D.E. 22-3).

Plaintiff has not submitted a response to Defendants' summary judgment motion. However, Plaintiff's verified complaint and testimony at the *Spears* hearing serve as competent summary judgment evidence.  *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017).  Accordingly, the competent summary judgment evidence establishes the following:

---

[4] Section 1915(e)(2)(B) mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious."  28 U.S.C. 1915(e)(2)(B).  *See also Souza v. FMC-Carswell*, No. 4:09-CV-469-Y, 2011 WL 611703, at *1 (N.D. Tex. Feb. 18, 2011) (dismissing plaintiff's claims for declaratory and injunctive relief under § 1915(e)(2)(B) because she was no longer incarcerated at the prison in which her condition-of-confinement claims arose)

### A.    Plaintiff's Verified Complaint and Spears Hearing Testimony

Plaintiff arrived at the McConnell Unit in March of 2014.  He was employed on the medical squad and performed various clean-up jobs throughout the prison during the day.  He lived in a dorm which consisted of bunk beds in cubicles that contained a small desk and a place to store personal property.  There are six (6) dorms at the McConnell Unit.  Each dorm holds 125 inmates and has its own dayroom and bathroom facilities.[5]

Plaintiff states that on April 20, 2015, prison officials installed twenty new bunks in each of the dayrooms of the six McConnell Unit dorms.  With the addition of twenty new inmates to his dorm, Plaintiff was subjected to "sleep deprivation, long pill window lines, [and] improper calories and portions of food which prevented [a] nutritional diet." (D.E. 1, p. 4).

Because of the increase of prisoners in his dorm, the prison operated on a 24-hour a day schedule with necessities such as uniforms and bedding being distributed at 3:00 a.m.   Laundry Department Manager Crouch allowed necessities to be distributed at this time "which sleep deprives the whole unit."  (D.E. 1, p. 3).  Plaintiff states he was unable to get eight hours of uninterrupted sleep, although he admits he was not  diagnosed with any sleep disorder or illness caused by a lack of sleep.  Plaintiff claims that, because of overcrowding and staff shortages, it was difficult to see a medical provider.  He was seeing a mental health care provider for insomnia but was unable to attend appointments due to lack of escorts.

---

[5] In his Objections to the May 13, 2016 M&R, Plaintiff clarified that each dormitory in the McConnell Unit has 125 inmates, ten showers, and four toilets.  (D.E.  11, p. 1).

Plaintiff received very little recreation time and he cannot remember the last time he was allowed outside for recreation. Plaintiff lost approximately twenty pounds during his time at the McConnell Unit. He complains the kitchen failed to serve fresh fruits or vegetables and Captain Salazar, as the prison's Food Service Manager, failed to ensure inmates received proper portions with proper calories. He was often stressed about the food situation. He became sick and had diarrhea one time after eating in the dining facility. He further states the overcrowding resulted in more fighting between prisoners and the prison guards were over-worked, stressed out, and more prone to use excessive force. Plaintiff did not feel safe at the McConnell Unit but never filed a Life in Danger claim.

According to Plaintiff, the available bathroom facilities could not handle the number of inmates in his dorm. He claims the showers were filthy but officials would not provide cleaning supplies. He states many of the sinks and toilets did not work, and only four of the ten showers were operable. He had to wait up to one hour to take a shower.

### B.    Senior Warden Martinez's Affidavit

Warden Martinez testified in his affidavit that: (1) the 24-hour building schedule is a policy created by the TDCJ administration; (2) necessities time at the unit, when the inmates receive their clothing and linens, is undertaken at 3:00 a.m.; (3) lights are turned off in the inmate dorms by 10:00 p.m.; (4) inmates are free to sleep throughout the day when they are not at work or in class; (5) inmates in the dorms are free to roam from the dayroom to the their cubicles throughout the day until 10:00 p.m.; (6) because Plaintiff

had a medical restriction and no work responsibilities from March of 2014 through June of 2015, he was free to sleep anytime during the day; and (7) Plaintiff was transferred to the Hightower Unit on July 7, 2015.  (D.E. 22-1, p. 2).

According to Warden Martinez, the American Correctional Association (ACA) conducts an external audit every three years.  Warden Martinez states a recent audit conducted in September of 2016 revealed that: (1) all dayrooms are equipped with urinals, toilets, and sinks adequate and accessible for all inmates; (2) inmates in dorms have access to toilets/wash basins 24 hours per day and are able to use these facilities without staff assistance; (3) the showers comply with code and are approved by the ACA; and (4) the dorms are equipped with thirty showers each, which is a ratio of 12.5/1 per inmate.  (D.E. 22-1, p. 3).  Warden Martinez further states inmates are given three meals a day, which must follow the calorie count as set forth by the TDCJ's dietician.  (D.E. 22-1, p. 3).

### C.    Plaintiff's TDCJ Grievances

In his Step 1 grievance, dated April 22, 2015, Plaintiff complained the McConnell Unit was overcrowded, which caused the following issues: (1) two out of three meals were served in the dorms and not the chow halls; (2) hot meals were not served; (3) recreation was not provided three times a day; (4) safety of prisoners and guards was adversely impacted; (5) the service of nutritional meals was prevented because inmates working in the kitchen failed to put the required calories in sack meal; (6) maintenance was non-existent; (7) there were insufficient toilets; (8) dayrooms were decreased; (8) inmates were forced to stand in line for hours at the pill window; (9) inmates were

allowed insufficient time to eat meals in the chow hall and were harassed by guards to hurry up and leave; (10) inmates could not see medical personnel in a timely manner; (11) there was no seating while waiting to see a medical provider; (12) necessities were run at 4:00 a.m., which deprived Plaintiff of sleep; and (13) guards  worked extreme hours, making them fall asleep or quick to anger.  (D.E. 22-2, pp. 5-6).  Warden Putnam responded to Plaintiff's Step 1 grievance on June 10, 2015, finding the McConnell Unit was not overcrowded during April of 2015 and that "[u]nit operations are conducted according to staffing, policy and procedure."  (D.E. 22-2, p. 6).

In Plaintiff's Step 2 grievance, dated June 15, 2015, Plaintiff countered that the McConnell Unit was never in compliance with government code in April of 2015 regarding inmate capacity.  (D.E. 22-2, p. 3).  He reiterated that, due to the overcrowding condition, the "McConnell Unit can not [sic] comply with security, meals, staffing, kitchen, laundry, medical, pill window" and maintenance.  (D.E. 22-2, p. 3).  Assistant Region IV Manager Garza responded to Plaintiff's Step 2 grievance on July 14, 2015, finding Plaintiff's complaints were appropriately addressed at the Step 1 level and Plaintiff had been reassigned to the Hightower Unit.  (D.E. 22-2, p. 4).

### D.    Plaintiff's Medical Records

Plaintiff was seen by medical staff at the Connally Unit on September 16, 2015. (D.E. 22-3, pp. 11-12).  Plaintiff reported to the medical provider that he had been moved from the McConnell Unit to the Hightower Unit for treatment, however, he had refused the treatment program.  (D.E. 22-3, p. 11).  He was then transferred to the Connally Unit where he was the victim of a sexual assault.  During the post assault medical assessment,

Plaintiff denied having any suicidal or homicidal thoughts.  (D.E. 22, p. 11).  He further reported, "if they had just returned me to McConnell, none of this would have happened." (D.E. 22, p. 11).

Plaintiff was subsequently transferred again and was seen by medical staff at the McConnell Unit on three occasions from October 19, 2015, through November 17, 2015. (D.E. 22-3, pp. 3-9).  Although he was diagnosed with hypertension during these visits, Plaintiff was assessed on each occasion as having no apparent mental health needs.  (D.E. 22-3, pp. 3-8).

## V.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

matters stated therein."  Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## VI.    DISCUSSION

### A.    Exhaustion

Defendants move to dismiss Plaintiff's Eighth Amendment claims for failure to exhaust his administrative remedies.  (D.E. 22, pp. 8-11). The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints.  *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam).   Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident.  *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level.  *Id.*  The Fifth Circuit requires that both steps be completed in order to file suit in federal court.  *Id.* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted.").  *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

Defendants assert Plaintiff's Step 1 and Step 2 grievances "wholly fail to even mention the names or actions of Defendants."   (D.E. 22, p. 10).   According to Defendants, none of the statements in Plaintiff's grievances give prison officials an opportunity to investigate any failure on the part of Defendants to meet constitutional standards.  (D.E. 22, p. 11).

In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The Fifth Circuit noted that one of the purposes of the exhaustion requirement is to give officials "time and opportunity to address complaints internally."  *Johnson*, 385 F.3d at 517 (citations omitted).  A grievance "should be considered sufficient to the extent that the grievance

gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* Further, the nature of the complaint will influence how much detail is necessary. *Id.* For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition, such as vermin in a cell or that commissary costs are too high, might not identify any individual. *Id.* Finally, the *Johnson* Court noted that the intent of the grievance procedure is not to provide personal notice to a particular official that he may be sued; the grievance is not the summons and complaint that initiates adversarial litigation. *Id.* at 522.

In this case, Plaintiff's Step 1 and Step 2 grievances each detail his chief complaint regarding prison overcrowding and its adverse impact on specific prison conditions including recreational time, the serving of nutritional meals, sleep schedule, institutional safety, and the bathroom and shower facilities. (D.E. 22-2, pp. 3, 5). While failing to identify individuals in his grievances, Plaintiff has nevertheless provided sufficient factual detail in both his Step 1 and Step 2 grievances to give prison officials both the time and opportunity to investigate his complaints related to overcrowding and to discover the individuals responsible for Plaintiff's injuries. *See Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000) (explaining that all § 1997e(a) requires "is that the prisoner provide during the grievance procedure all of the information concerning his claims that he has or reasonably could obtain").

Defendants' contention attacking Plaintiff's failure to identify each Defendant in the grievances, therefore, is without merit because the details provided therein regarding the alleged unconstitutional conditions of confinement were sufficient to exhaust his

claims. Accordingly, Defendants are not entitled to dismissal of Plaintiff's claims for lack of exhaustion.

**B. Claims against Supervisory Defendants**

Defendants contend none of them were personally involved in allegedly violating Plaintiff's constitutional rights and they cannot be held responsible for any acts of their subordinates to trigger § 1983 liability. (D.E. 22, pp. 5-8, 15).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). "Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Thus, a supervisor who is not personally involved is liable only if he has implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304.

Plaintiff complains Assistant Warden Putnam denied his Step 1 grievance without fixing any of the problems cited therein. (Doc. 1, p. 3). Plaintiff's claim against Warden Putnam is based on Warden Putnam being an official who reviewed Plaintiff's grievance. This complaint fails to state a constitutional violation against Assistant Warden Putnam

because a prisoner has no constitutional right to file a grievance, let alone have it investigated or answered in his favor.  *See Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that a prisoner has no constitutional right in having grievances investigated or resolved in his favor).  Plaintiff otherwise presents no evidence to show Assistant Warden Putnam was personally involved in the prison overcrowding or any of the related conditions of confinement which Plaintiff alleges have caused him harm.  Plaintiff also has not alleged or presented evidence that either Captain Salazar or Laundry Manager Crouch was personally involved in any of the alleged constitutional deprivations.

Plaintiff's allegations against Defendants reference their supervisory capacity as either the assistant warden of the McConnell Unit or managers of the prison's food and laundry departments.  The undisputed summary judgment evidence establishes that none of these Defendants implemented an unconstitutional policy that resulted in an injury to Plaintiff.  While the TDCJ has a 24-hour building policy allowing for necessities to be run at 3:00 a.m., Defendants had nothing to do with the creation or implementation of this policy which may have adversely impacted Plaintiff's sleep.  Thus, even when viewing the evidence in a light most favorable to Plaintiff, he cannot show or establish any disputed facts as to whether Defendants are liable in their supervisory capacity.

Because Defendants have no personal involvement in Plaintiff's constitutional deprivations and are not liable in their supervisory capacity, it is respectfully recommended that Defendants' summary judgment motion be granted and that Plaintiff's claims against each defendant in his individual capacity be dismissed with prejudice.

Alternatively, even if one or all of the Defendants were the proper parties to sue in this action, Plaintiff's Eighth Amendment claims are also subject to dismissal for the reasons set forth below.

### C.    Eighth Amendment Claims

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).  Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.

Deliberate indifference is more than mere negligence.  *Id.* at 835.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety and the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  *Id.* at 837.

Overcrowding may give rise to unconstitutional conditions even though overcrowding itself is not *per se* unconstitutional.  *See Castillo v. Cameron Cty., Tex.*, 238 F.3d 339, 354 (5th Cir. 2001) (citing *Rhodes*, 452 U.S. at 347-50).  Thus, with

respect to issues of overcrowding, courts are "obliged to 'examine the *actual effects'* of the alleged overcrowding" on the complaining inmate. *Nananjo v. Thompson*, No. 11-CV-105, 2014 WL 12648495, at *9 (W.D. Tex. Jan. 2, 2014) (quoting *Rhodes*, 452 U.S. at 367 (Brennan J. concurring) (emphasis in original)). "While overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measures of life's necessities." *Williams v. Edenfield*, No. 1:12-CV-076, 2012 WL 6645611, at *4 (N.D. Tex. Dec. 21, 2012) (citing *Rhodes*, 452 U.S. at 348).

### *(1)   Recreation*

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a *per se* constitutional violation." *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (citing *Miller v. Carson*, 536 F.2d 741, 751 n.12 (5th Cir. 1977); *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982)). "What is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 277 F.3d at 1373. (citation omitted). To succeed on a claim for lack of exercise, the plaintiff must provide facts that "support the existence of any health hazard under the specific circumstances involved." *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.), *amend in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982).

In this case, Plaintiff complains he received almost "zero" recreation and he cannot remember the last time he was allowed outside for recreation time. Plaintiff has come forward with no competent summary judgment evidence to demonstrate any of the

Defendants knew about Plaintiff's limited access to recreation and then acted to deny him any opportunities for recreation. Rather, Warden Martinez testified in his affidavit that Plaintiff had access to the dayroom space throughout the days which would allow for opportunities for recreation.

Plaintiff otherwise has not alleged any injuries, much less a serious injury or illness, resulting from any denial of adequate recreation time. *See Hernandez v. Velasquez*, 522 F.3d 558, 560-61 (5th Cir. 2008) (holding that an inmate's Eighth Amendment rights are not violated by being placed on lockdown for thirteen months without outdoor exercise, even with evidence of muscle atrophy, loss of range of movement, and depression, because the inmate suffered no serious illness or injury and could not therefore demonstrate he was placed at substantial risk of serious harm). Thus, even when viewing the evidence in a light most favorable to Plaintiff, Defendants did not violate Plaintiff's Eighth Amendment rights with respect to his denial-of-recreation claim.

### (2)   *Nutritional Meals*

The Constitution requires inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health. *See Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986). The constitutionality of prison food simply is not measured by its variety and gastronomic appeal. *See e.g. Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir. 1981) (holding that a diet consisting "mainly of starch and carbohydrates with few vegetables and fruits," while "likely dull," is not constitutionally inadequate),

*overruled on other grounds*, *Int'l Woodworkers of America v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

Warden Martinez testified inmates are given three meals a day, which must follow the calorie count as set forth by the TDCJ's dietician.  (D.E. 22-1, p. 3).  Plaintiff states, however, the kitchen failed to serve fresh fruits or vegetables, he lost approximately twenty pounds while at the McConnell Unit, and he became sick and had diarrhea one time after eating in the dining facility.  Plaintiff's grievances further reflect that: (1) many meals were not served in the dining facilities; (2) hot meals were not served; (3) the service of nutritional meals was prevented because inmates working in kitchen failed to put the required calories in sack meals; and (4) inmates were allowed insufficient time to eat meals in the dining facility and were harassed by guards to hurry up and leave.

Plaintiff's claim that he suffered diarrhea on one occasion after eating a meal fails to show he was denied constitutionally-deficient meals.  *Cf. Ybarra v. Meador*, 427 F. App'x 325, 326 (5th Cir. 2011) (recognizing that "isolated instances of meal deprivation are not constitutionally cognizable").  While complaining about the lack of fresh fruits and vegetables, Plaintiff has offered nothing beyond conclusory statements to show the nutritional value of the meals provided was inadequate or contained insufficient calories. Plaintiff provides no evidence to demonstrate his weight loss occurred as a result of nutritional deficiencies, and his medical records submitted to the Court reveal no health issue based on either weight loss or nutritional deficiencies.

Even assuming he could establish a serious health risk based on his food intake, Plaintiff presents no evidence that any prison officials, including Defendants, were aware

of such an excessive risk to his health and disregarded Plaintiff's complaints.  Thus, even

when viewing the evidence in a light most favorable to Plaintiff, Defendants did not

violate Plaintiff's Eighth Amendment rights with respect to his claim of nutritionally-

inadequate meals.

### (3)  *Sleep Deprivation*

Because "sleep undoubtedly counts as one of life's basic needs," any "[c]onditions

designed to prevent sleep . . . might violate the Eighth Amendment."  *Harper v. Showers*,

174 F.3d 716, 720 (5th Cir. 1999);  *See also Walker v. Schult*, 717 F.3d 119, 126-28 (2d

Cir. 2013) (concluding that sleep deprivation may deny prisoner of a minimal civilized

measure of life's necessities).   In an unpublished decision, the Fifth Circuit in *Walker v.

Nunn*, 456 F. App'x 419 (5th Cir. 2011), considered the plaintiff's Eighth Amendment

claim of inadequate sleep due to the prison schedule, prison noise, and staff misconduct.

*Id.* at 422.  The Fifth Circuit affirmed the dismissal of his sleep deprivation claims based

on: (1) the lack of evidence that the named defendants acted with deliberate indifference

to the risk of inadequate sleep; and (2) the defendant could not be held liable for the acts

of the subordinate prison officials because the plaintiff had not demonstrated the elements

of a failure-to-supervise claim.  *Id.* at 423-24.

In the present case, the competent summary judgment evidence establishes that:

(1) the 24-hour building schedule is a policy created by the TDCJ administration; (2)

necessities time at the unit, when the inmates receive their clothing and linens, is

performed at 3:00 a.m.; (3) lights are turned off in the inmate dormitories by 10:00 p.m.;

(4) inmates are free to sleep throughout the day when they are not at work or in class; and

(5) while Plaintiff states he saw a medical health care provider for insomnia, his medical records neither reflect any insomnia complaints nor indicate he was ever diagnosed with a sleep disorder or illness caused by a lack of sleep.  Additionally, as Plaintiff had a medical restriction and did not have a work assignment, he was free to sleep any time during the day.  (D.E. 22-1, p. 2). Plaintiff has failed to show the overcrowding conditions at the McConnell Unit impacted the 24-hour building schedule which sets forth when necessities were handed out to the inmates.  As Warden Martinez testified, necessities were run at 3:00 a.m. before he became the warden.  (D.E. 2-1, p. 2).

The undisputed evidence further does not show Plaintiff was subjected to continuous interruptions in his sleep during the night or that he was at risk of serious harm due to any sleep interruptions caused by the 3:00 a.m. call for necessities.  The medical records do not reveal Plaintiff complained of insomnia or disclosed any illness related to sleep deprivation.  Plaintiff otherwise presents no evidence that any prison officials, including Defendants, were aware of an excessive risk to his health due to sleep deprivation and then proceeded to disregard any such complaint.  Thus, even when viewing the evidence in a light most favorable to Plaintiff, Defendants did not violate Plaintiff's Eighth Amendment rights with respect to his Eighth Amendment claim of sleep deprivation.

### (4)  Inmate Safety

The Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates and officers. *Farmer*, 511 U.S. at 833; *Johnson v. Thaler*, No. C-09-313, 2009 WL 5216936,

at *3 (S.D. Tex. Dec. 24, 2009) (citing *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002)). In order for prison officials to be held liable under the Eighth Amendment for failure to protect, a prisoner must prove the official knew of and disregarded an excessive risk to the inmate's safety; was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference; and failed to take reasonable remedial action. *Farmer*, 511 U.S. at 847.

Plaintiff states the overcrowding condition in the McConnell Unit led to more fighting between prisoners and the prison guards are over-worked, stressed out, and more prone to use excessive force. Because he has failed to state an injury, Defendants assert Plaintiff lacks standing to bring a claim based on whether the overcrowding condition has caused the McConnell Unit to be more dangerous. (D.E. 22, p. 17).

Plaintiff fails to allege or submit any evidence that he was involved in any fights with other inmates or subjected to excessive force by prison officials. Plaintiff has not demonstrated any actual harm, and his speculative worries that he may be subjected to violence at the hands of other inmates or prison guards fail to establish an Eighth Amendment claim. *See Jernigan v. Dretke*, No. H-04-4672, 2005 WL 1185627, at *3 (S.D. Tex. Apr. 29, 2005) (citing *Babcock v. White*, 102 F.3d 267, 271-72 (7th Cir. 1996)). *See also Lineberry v. United States*, 436 F. App'x 293, 295 (5th Cir. 2010) (concluding that the prisoner cannot show an excessive risk he will suffer a serious harm based on the prison's overcrowding because he has not alleged he was ever involved in a fight or otherwise injured). Further, Plaintiff has now been released from custody. Thus, even when viewing the evidence in a light most favorable to Plaintiff, Defendants did not

violate Plaintiff's Eighth Amendment rights with respect to his claim attacking institutional safety.

### (5)   *Bathroom and Shower Facilities*

Plaintiff states the dorm showers are filthy, many of the sinks and toilets do not work, only four of the twelve showers are operable, and he had to wait up to one hour to take a shower.  Warden Martinez testified a recent audit conducted in September of 2016 revealed: (1) all dayrooms are equipped with urinals, toilets, and sinks adequate and accessible for all inmates; (2) inmates in dormitories have access to toilets/wash basins 24 hours per day and are able to use these facilities without staff assistance; (3) the showers comply with code and are approved by the ACA; and (4) the dormitories are equipped with thirty showers each.  (D.E. 22-1, p. 3).

Even assuming the shower and bathroom conditions were as Plaintiff describes, he has presented no competent summary judgment evidence to indicate he was harmed by the unsanitary shower and bathroom conditions at the McConnell Unit.  His only stated injury regarding the shower and bathroom facilities is that he sometime had to wait to take a shower.  Such an inconvenience, however, fails to establish an Eighth Amendment violation.  *Cf. Vasquez v. Braemer*, 586 F. App'x 224, 228 (allowing inmates only two showers each week does not violate the Eighth Amendment).  Thus, even when viewing the evidence in a light most favorable to Plaintiff, Defendants did not violate Plaintiff's Eighth Amendment rights with respect to the conditions of the McConnell Unit shower and bathroom facilities.

### D.    Qualified Immunity

Defendants contend they are entitled to qualified immunity which shields them from constitutional liability in their individual capacities.  (D.E. 22, pp. 4-5).  The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  "To discharge this burden, the plaintiff must satisfy a two-prong test.  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  First, he must claim the defendant committed a constitutional violation under current law.  *Id.*  Second, he must claim the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation has occurred.  *See Pearson*, 555 U.S. at 236.  In this case, because Plaintiff has failed to state cognizable constitutional claims against Defendants in their individual capacities, it is not necessary to examine whether Defendants' actions were objectively reasonable.  Accordingly, it is respectfully

recommended that Defendants are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims asserted against them in their individual capacities.

## VII.   RECOMMENDATION

Based on the foregoing, Plaintiff's claims for injunctive and declaratory relief against Defendants and Warden Barber in their official capacities are moot because Plaintiff is no longer incarcerated at the McConnell Unit. While dismissal for failure to exhaust administrative remedies is not appropriate, the competent summary judgment evidence establishes that Plaintiff's Eighth Amendment claims related to the prison's overcrowding conditions are subject to dismissal.

Accordingly, it is respectfully recommended that Plaintiff's claims for declaratory and injunctive relief against Defendants and Warden Barber in their official capacities be **DISMISSED** pursuant to 28 U.S.C. 1915(e)(2)(B). It is respectfully recommended that the Court **GRANT** Defendants' motion for summary judgment (D.E. 22) and **DISMISS** Plaintiff's Eighth Amendment claims against them in their individual capacities with prejudice.

Respectfully submitted this 26th day of June, 2017.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).